UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

THOMAS E. PEREZ, Secretary of Labor,
United States Department of Labor,                                                     Plaintiff,

v.                                                                      Civil Action No. 3:13-cv-00935-DJH

OFF DUTY POLICE SERVICES, INC., et al.,                                    Defendants.

* * * * *

**<u>MEMORANDUM OPINION AND ORDER</u>**

Defendant Off Duty Police Services, Inc. ("ODPS") and its owners Darrell and Bonnie

Spurgeon (collectively, "Defendants") provide security and traffic-control services in and around

Louisville, Kentucky.  The Department of Labor ("DOL") claims that Defendants failed to pay

their employees proper overtime wages in compliance with the Fair Labor Standards Act of

1938, 29 U.S.C. § 201, *et seq.* ("FLSA").  DOL requests summary judgment on this claim and

seeks to recover back wages, liquidated damages, and a prospective injunction to ensure

Defendants' future compliance with the FLSA.  (Docket Number 18)  Because there are genuine

disputes of material fact as to whether the security and traffic-control officers were independent

contractors—not employees subject to FLSA requirements—the Court will deny DOL's motion

for summary judgment.

## I.      BACKGROUND

Darrell Spurgeon formed ODPS in 1997 to provide security and traffic-control services to

companies and individuals in and around Louisville, Kentucky.  (DN 18-3, PageID # 115)  From

the time he formed ODPS until 2010 or 2011, Mr. Spurgeon was the sole stockholder and served

as president of the company.  (*Id*. PageID # 112–113)  During either 2010 or 2011, Mr.

Spurgeon's wife, Bonnie Spurgeon, acquired 51% of ODPS's stock and succeeded her husband

1

as president of the company.  From that point forward, Mr. Spurgeon has continued to own 49% of ODPS's stock and serve as vice president.  (*Id*. PageID # 111, 113, 115; DN 18-5, PageID # 191)  Mr. Spurgeon has always handled the day-to-day operations of ODPS, while Ms. Spurgeon handles the accounting functions.  (DN 18-3, PageID # 111, 113, 130; DN 18-5, PageID # 191)

The Spurgeons are the only two individuals to ever be identified as employees of ODPS.  (DN 18-3, PageID # 119)  Other individuals who have worked with ODPS have always been classified as independent contractors.  (*Id*. PageID # 117)  In fact, all workers, other than the Spurgeons, sign contracts classifying them as independent contractors.  (*Id*. PageID # 142–143)  ODPS mostly paid its workers on a per hour basis but occasionally paid them per project.  (*Id*. PageID # 124–125, 127) Many of these individuals are or were sworn law enforcement officers who received increased pay because of their credentials.  (*Id*. PageID # 127, 141)

Typically, individuals working on an ODPS project were assigned shifts the night before an ODPS customer required the work.  (DN 18-3, PageID # 157)  After an ODPS customer requested a security guard or traffic-control officer, Darrell Spurgeon would call workers listed in ODPS's database or send out an email or text message to members of the database.  (DN 18-3, PageID # 116–117)  Once a guard or officer completed a job, that worker provided Mr. Spurgeon with an invoice indicating the number of hours worked.  (DN 18-3, PageID # 117, 138)  Mr. Spurgeon would pay the worker upon receipt of the invoice, and then bill the ODPS customer for the work performed.  (DN 18-3, PageID # 117, 125)  Mr. Spurgeon concedes that workers who performed greater than forty hours of labor during a week were not paid at an increased rate for overtime.  (DN 18-3, PageID # 120)

On September 30, 2013, DOL filed the present lawsuit alleging that Defendants' failure to pay its workers overtime wages is a violation of the FLSA.  On February 5, 2015, DOL filed

its motion for summary judgment, asking this Court to find—as a matter of law—that Defendants violated the FLSA.  For the following reasons, DOL's motion for summary judgment will be denied.

## II.     STANDARD

To grant a motion for summary judgment, this Court must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of identifying the basis for its motion and the parts of the record that demonstrate an absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  If the moving party satisfies this burden, the non-moving party must show specific facts demonstrating a genuine issue of fact for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

While the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than "simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-moving party must show specific facts demonstrating that a genuine issue of fact exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute."  Fed. R. Civ. P. 56(c)(1).  The non-moving party must establish a genuine issue of material fact with respect to each element of each of its claims.  *Celotex*, 477 U.S. at 322-23.  The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient.  Instead, there must be evidence upon which a jury could reasonably find for the non-moving party.  *Anderson*, 477 U.S. at 252.

### III.    STATUTORY FRAMEWORK

Congress passed the Fair Labor Standards Act in 1938 to ensure a "minimum standard of living necessary for health, efficiency, and general well-being of workers."  29 U.S.C. § 202(a). The FLSA requires employers to pay covered employees who work more than 40 hours in one workweek a rate of one and one-half times their regular rate of pay.  *Id.* § 207(a)(1). "Employee" is defined as "any individual employed by an employer."  *Id.* § 203(e)(1). "Employees are those who as a matter of economic reality are dependent upon the business to which they render service."  *Donovan v. Brandel*, 736 F.2d 1114, 1116 (6th Cir. 1984).

The statute defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  Courts have defined "employer" broadly in light of the remedial purposes of the FLSA, basing the determination more on "economic realities" than on common law concepts of agency.  *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 965 (6th Cir. 1991).  In *Dole,* the Sixth Circuit held that more than one employer can be jointly liable for FLSA violations.  *Id.*  Additionally, "a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages."  *Id.* (quoting *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983)).

Employers in violation of § 207 are liable to affected employees for the amount of unpaid overtime compensation, as well as for an equal amount in liquidated damages, reasonable attorney's fees, and costs for the action.  29 U.S.C § 216(b).  Courts can, at their discretion, deny or decrease the liquidated-damages award if the employer shows that it acted in good faith and that it "had reasonable grounds for believing that [its] act or omission was not a violation of the [FLSA]."  *Id.* § 260.

4

# IV.   ANALYSIS

"Under the Fair Labor Standards Act . . . employers must pay their employees . . . overtime for hours worked in excess of forty in a workweek." *Misewicz v. City of Memphis, Tenn.*, 771 F.3d 332, 333–334 (6th Cir. 2014) (citing 29 U.S.C. § 207(a)(1)).   Only employees are entitled to FLSA overtime and minimum wage compensation. *Keller v. Miri Microsystems LLC*, 781 F.3d 799, 806 (6th Cir. 2015) (citing *Ellington v. City of East Cleveland*, 689 F.3d 549, 553 (6th Cir. 2012).   Independent contractors do not receive FLSA protection. *Id.* (citing *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 729 (1947)).   The Supreme Court has recognized, however, that businesses are liable to workers for overtime wages even if the company "put[s] . . . an 'independent contractor' label" on a worker whose duties "follow[] the usual path of an employee." *Id.* at 807 (quoting *Rutherford*, 331 U.S. at 729).   Accordingly, in order to properly enforce the FLSA, the Court must examine whether Defendants have misclassified their workers as independent contractors.   Whether workers are employees or independent contractors is a threshold issue in this matter. *See Hopkins v. Cornerstone Am.*, 545 F.3d 338, 341 (5th Cir. 2008); *Browning v. Ceva Freight, LLC*, 885 F. Supp. 2d 590, 597 (E.D. N.Y. 2012).[1]

This issue "is a mixed question of law and fact." *Id.* at 806 (citing *Lilley v. BTM Corp.*, 958 F.2d 746, 750 n.1 (6th Cir. 1992) (holding that employee status was an issue for a jury to resolve)).   "[W]here there is a genuine issue of fact or conflicting inferences can be drawn from the undisputed facts . . . the question is to be resolved by the finder of fact in accordance with the appropriate rules of law." *Id.* (quoting *Lilley*, 958 F.2d at 750).

---

[1] Because DOL fails to meet its burden for summary judgment on this threshold issue, the Court will not address the remaining issues of DOL's FLSA claim herein.

In order to determine whether a worker is an employee under the FLSA, the Court must apply a six-factor "economic-reality test." "This test is a loose formulation, leaving the determination of employment status to case-by-case resolution based on the totality of the circumstances." *Imars v. Contractors Mfg. Servs., Inc.*, 165 F.3d 27 at *3 (6th Cir. 1998) (quoting *Lilley*, 958 F.2d at 750). The six factors are: 1) the degree of the alleged employer's right to control the manner in which the work is performed; 2) the worker's opportunity for profit or loss, depending upon his skill; 3) the worker's investment in equipment or materials for the task; 4) the permanency of the relationship between the worker and alleged employer; 5) the degree of skill required for the rendering of the services; and 6) whether the service rendered is an integral part of the alleged employer's business. *Id*. at 807. These factors are often called the "*Silk* factors" in reference to *United States v. Silk*, 331 U.S. 704 (1947), the Supreme Court case from which they derive. No single *Silk* factor is determinative; "[a] central question is the worker's economic dependence upon the business for which he is laboring." *Brandel*, 736 F.2d at 1120. In this case, consideration of the *Silk* factors reveals several genuine disputes of material fact as to whether Defendants' workers were employees or independent contractors. Therefore, summary judgment is inappropriate.

### A. The degree of the alleged employer's right to control the manner in which the work is performed

The first *Silk* factor to be considered by the Court is whether Defendants exercised control over the workers' performance of their jobs. Central to this inquiry is whether an alleged employer directs the manner and method of performance, supervises day-to-day conduct, or dictates the hours that individuals work. *Brandel*, 736 F.2d at 1119.

The record reflects several genuine disputes of material fact with regard to Defendants' right to control. There is conflicting evidence as to whether Defendants or ODPS's customers

developed and enforced work requirements.  DOL cites evidence in the record that Mr. Spurgeon

created documents detailing worksite rules, posted them to ODPS's website, and enforced them.

(DN 18-3, PageID # 154; DN 18-7, PageID # 246–247; DN 18-8, PageID # 271)  However, there

is also evidence that these rules were never instituted (DN 18-3, PageID # 154) or were simply

customer requirements that ODPS was passing along to its workers (*Id*. PageID # 155).

To support its assertion that ODPS exercised control over the manner and method of

performance, DOL also cites evidence that ODPS would notify its workers of the time and

location to report to a job.  (*Id*. PageID # 158)  In response, Defendants point to evidence that the

workers were tasked with assessing the customer's requested job setup for any safety risks or

other issues.  (DN 25-12, PageID # 628–629; DN 25-6, PageID # 583; DN 25-11, PageID # 620;

DN 25-7, PageID # 587; DN 25-8, PageID # 591)  The record also indicates that the workers

were empowered to utilize their discretion to either tell the customer of their concerns or leave

the project.  (*Id*.; DN 25-3, PageID # 572)

Moreover, evidence in the record could reasonably allow a factfinder to determine that

Defendants did not enforce work rules, that the workers reported entirely to the customers, and

that Defendants did not provide instruction on how to perform a job or visit customer job sites to

supervise performance.  (*See*, *e.g.*, DN 18-3, PageID # 116, 133, 141, 156, 160; DN 25-12,

PageID # 626–628, DN 25-10, PageID # 614–616, DN 25-2, PageID # 568; DN 25-3, PageID #

573; DN 25-4, PageID # 576).  There is also evidence that ODPS did not provide any training to

its workers on how to perform their jobs.  (DN 18-3, PageID # 143; DN 25-12, PageID # 630–

632)  Finally, there is conflicting evidence regarding whether workers are assigned jobs or

merely offered jobs.  (DN 18-3, PageID # 159; DN 18-7, PageID # 249; DN 18-9, PageID # 298;

DN 18-10, PageID # 317)   This evidence, viewed in the light most favorable to Defendants, establishes genuine disputes over material facts with respect to the right-to-control *Silk* factor.

### B.  The worker's opportunity for profit or loss, depending upon his skill

The next *Silk* factor to consider is whether the ODPS workers had an opportunity for greater profits based on management and technical skills.  *Brandel*, 736 F.2d at 1119.  "The question under the opportunity for profit or loss factor is whether [the workers'] earnings were tied to their performance once they accepted work."  *Crouch v. Guardian Angel Nursing, Inc.*, No. 3:07-cv-00541, 2009 WL 3737887, at *18 (M.D. Tenn. Nov. 4, 2009) (citing *Wilson v. Guardian Angel Nursing, Inc.*, No. 3:07-0069, 2008 WL 294461, at *11 (M.D. Tenn. July 31, 2008); *see also Brandel*, 736 F.2d at 1119.

DOL relies exclusively on the prevalence of hourly pay rates to argue that this factor weighs in favor of an employee classification.  While it is true that hourly wages often weigh in favor of employee classification, the existence of hourly pay is not always conclusive.  *See*, *e.g.*, *Carrell v. Sunland Constr., Inc.*, 998 F.2d 330 (11th Cir. 1993) (finding that welders working on hourly wages were able to control their profits by minimizing their costs).  The Sixth Circuit has identified a worker's ability to request, accept, or decline additional assignments and control his schedule as indicative of an ability to maximize profit.  *Keller*, 781 F.3d at 813.  A worker's ability to control his own schedule provides the potential to profit from other ventures by efficiently managing that schedule.  *See id*.  Here, the record contains evidence that ODPS workers accepted jobs with ODPS in order to supplement income from other jobs.  (DN 18-3, PageID # 142)  Additionally, evidence in the record demonstrates that ODPS workers could control when and how much they worked.  (*Id*. PageID # 117)  When viewed in the light most

favorable to Defendants, this evidence creates a genuine dispute of material fact for this *Silk* factor.

### C.  The worker's investment in equipment or materials for the task

The third *Silk* factor is whether the workers have made any significant capital investments in order to perform their jobs.  "The capital investment factor is most significant if it reveals that the worker performs a specialized service that requires a tool or application which he has mastered or that the worker is simply using implements of the [company] to accomplish the task." *Brandel*, 736 F.2d at 1119.  The Court "must compare the worker's investment in the equipment to perform his job with the company's total investment, including office rental space, advertising, software, phone systems, or insurance." *Keller*, 781 F.3d at 810.  The key consideration is whether the investments are evidence of the workers' economic independence.  Some capital investments do not necessarily evidence economic independence.  For example, "'investment of a vehicle is no small matter, [but] that investment is somewhat diluted when one considers that the vehicle is also used by most drivers for personal purposes.'" *Id*. (quoting *Herman v. Express Sixty-Minutes Delivery Serv., Inc.*, 161 F.3d 299, 304 (5th Cir. 1998)).

The parties dispute the significance of the workers' equipment investments compared to equipment provided to them by Defendants.  DOL acknowledges that the workers have supplied some of their own equipment, but it argues that the weight of Defendants' investments tips the scales towards employee status.  The record does reflect, for example, that Defendants provided ODPS patches to some workers (DN 18-3, PageID # 148–150) and a cellular telephone to at least one worker (DN 18-6, PageID # 216–217, 234–235).

However, there is also substantial evidence in the record that the workers procured equipment on their own.  There is evidence that some workers have purchased their own vehicles, lights, and stop-and-go signs to be used in their duties.  (DN 18-3, PageID # 132, 149)

9

While it is possible that the cars may have been used in the workers' personal lives, there is at least some evidence in the record that the cars were specifically purchased for use on ODPS jobs. (*Id*. PageID # 132, 149; DN 25-3, PageID # 572; DN 25-4, PageID # 576; DN 25-11, PageID # 619)   When viewed in the light most favorable to Defendants, there is sufficient evidence to create a genuine issue of material fact regarding the significance of the workers' capital investments.

### D.  The permanency of the relationship between the worker and alleged employer

The next *Silk* factor to examine is the degree of permanence in the working relationship. "Generally, independent contractors have variable or impermanent working relationships with the principal company because they often have fixed employment periods and transfer from place to place as particular work is offered to them, whereas employees usually work for only one employer and such relationship is continuous and indefinite in duration." *Keller*, 781 F.3d at 807 (quoting *Baker v. Flint Eng'g & Constr. Co.*, 137 F.3d 1436, 1442 (10th Cir. 1998) (internal quotation marks omitted)).   If a worker has multiple jobs for different companies, that fact weighs in favor of classification as an independent contractor.  *See Brandel*, 736 F.2d at 1117. However, "employees may work for more than one employer without losing their benefits under the FLSA." *Keller*, 781 F.3d at 808 (quoting *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1060 (2d Cir. 1988)).   Finally, the length and regularity of the working relationship between the workers and alleged employer is important.  *See Baker*, 137 F.3d at 1442.

DOL argues that Defendants maintained permanent employer-employee relationships with its workers.   It cites to evidence in the record that 1) some workers performed jobs for ODPS for over ten years; and 2) some workers relied on ODPS jobs as their sole source of income.  (DN 18-3, PageID # 117; DN 18-7, PageID # 242; DN 18-8, PageID # 266; DN 18-9,

PageID # 290)   However, the record contains evidence that the working relationship between Defendants and the workers was often intermittent, even over the course of more than ten years. *See*, *e.g.*, (DN 18-3, PageID # 117; DN 25-3, PageID # 571; DN 25-6, PageID # 582; DN 25-4, PageID # 575; DN 25-7, PageID # 586; DN 25-8, PageID # 590; DN 25-9, PageID # 594). There is also evidence that many of the workers maintained full-time employment with other companies and utilized ODPS as a means to supplement their income.  (DN 18-3, PageID # 127, 141).  In fact, there is evidence that some workers operated businesses similar to ODPS.  (DN 25-2, PageID # 559–560; DN 25-10, PageID # 604–607)  Examining the evidence in the light most favorable to Defendants, the Court finds that there is a genuine dispute of material fact about whether Defendants and the workers had a permanent working relationship.

### E.  The degree of skill required for the rendering of services

The fifth *Silk* factor the Court must consider is the degree of skill required by ODPS jobs. "Skills are not the monopoly of independent contractors."  *Sec'y of Labor, U.S. Dep't of Labor v. Lauritzen*, 835 F.2d 1529, 1537 (7th Cir. 1987).  More important to the inquiry is whether the workers' profits were increased due to "initiative, judgment[,] or foresight of the typical independent contractor," or whether their work "was more like piecework."  *Keller*, 781 F.3d at 809 (quoting *Rutherford*, 331 U.S. at 730).  To a certain extent, all workers have skills relevant to their job performance, but "it is also important to ask how the worker acquired his skill."  *Id*. (citing *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1318 (11th Cir. 2013)).  If a worker learned his craft through years of experience, "then it is more likely that the worker's compensation varies with his unique skill and talent."  *Id*.  "On the other hand, if the worker's training period is short, or the company provides all workers with the skills necessary to perform the job, then that weighs in favor of finding that the worker is indistinguishable from an employee."  *Id*.

DOL has presented the Court with evidence that some of the jobs undertaken by ODPS workers require little skill.  *See*, *e.g.*, DN 18-13, PageID # 368–369; DN 18-7, PageID # 242–243; DN 18-8, PageID # 267; DN 18-9, PageID # 291.   However, Defendants have offered evidence that skills were required for ODPS jobs.  (DN 18-3, PageID # 116–117, 119; DN 25-2 PageID # 630–631).   Furthermore, there is evidence in the record that ODPS workers require training that is not provided by ODPS and that the workers must be certified by the Commonwealth of Kentucky.  (DN 18-3, PageID # 132–133, 144; DN 25-12, PageID # 630–631).  Finally, whether workers had experience as a sworn law enforcement officer impacted the compensation they received.  (DN 18-3, PageID # 127, 141)  Accordingly, there is a genuine dispute of material fact regarding the degree of skill required to perform jobs for ODPS.

### F.  Whether the service rendered is an integral part of the alleged employer's business

The final *Silk* factor for the Court to consider is whether the workers provided services that are "an integral part" of Defendants' business.  *Keller*, 781 F.3d at 815 (citing *Brandel,* 736 F.2d at 1119–1120).  If a worker is integral to a business, it is more likely that the worker is an employee.  *Id*.  Defendants provide security and traffic-control services, both of which require participation of the workers.  Defendants argue that they provide a wide range of services, but they do not cite any evidence in the record of substantial services for which the workers are not integral.  Therefore, Defendants have not presented the Court with a genuine dispute of material fact for this *Silk* factor.  Based on the record evidence—even considered in a light most favorable to Defendants—this factor weighs in favor of employee classification.  Despite this, because several genuine disputes of material fact exist with regard to the other five factors of the *Silk* balancing test, the Court will not grant summary judgment based solely on this factor.

### G. Other factors

The economic-reality test is not an exclusive list of factors.  The Court "may and should look to other evidence in the record to determine whether the totality of the circumstances establishes" that the ODPS workers were employees.  *Id.*  In this case, one piece of evidence that a reasonable jury could consider important is that the workers signed independent contractor agreements.  (DN 18-3, PageID # 142–143)  However, classification intentions "as expressed through a contract should not dispose of a case like this, in which the 'economic reality' and level of dependence are otherwise unclear."  *Imars*, 165 F.3d 27 at *6 (denying summary judgment because "the appropriate weight of the factors can be more properly assessed after a trial").  Therefore, because there are genuine disputes over material facts and a factfinder could reasonably conclude that the workers were independent contractors, summary judgment is inappropriate.

### V.     CONCLUSION

Because there are genuine disputes of fact and reasonable inferences from which a jury could find that the ODPS workers were independent contractors, DOL is not entitled to summary judgment.  Accordingly, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** that the Plaintiff's motion for summary judgment (DN 18) is **DENIED**.

July 2, 2015

**David J. Hale, Judge**
**United States District Court**